## COE v. LINDLEY *et al.*

1. Vendor and vendee: FRAUD: ACTION: DEFENSE. A vendee, who was induced to purchase land through the fraudulent representation of the vendor, may plead the damages accruing to him by reason thereof as a partial defense to an action by the vendor for the purchase-money. The provisions of our statute, allowing the damages resulting from the fraud to be pleaded as a counter claim or cross-demand, does not take away or affect the right of the vendee, existing at common law, to rely upon the fraud as a defense, in whole or in part, to the action.

2. —— The vendee, in such case, has his choice of remedies. He may rescind the contract, or stand to the bargain and recover damages on account of the fraud, or plead them by way of defense or cross-demand in an action by the vendor; and, when he elects to pursue the latter remedies, he need not give notice of the fraud.

3. Pleading: PRACTICE: EXHIBITS. A demurrer to a cross-petition, on the ground that it does not set out a copy of the written obligation on which it is based, will not be sustained when it appears that the obligation is attached to the original petition.

4. —— So, if the petition is not sufficiently specific in its statement of facts, the remedy is by motion for a more specific statement, and not by demurrer.

*Appeal from Polk Circuit Court.*

THURSDAY, OCTOBER 19.

THE plaintiff alleges that, on the 8th day of June, 1855, he sold to B. F. Lindley and J. A. Lindley six hundred

and forty acres of land for the consideration of $3,200, of which the defendants paid in all the sum of $1,420.43 and agreed to pay the balance in three equal annual installments, when the land would sell for $10 per acre, and also to pay, on the 25th day of December, 1855, the value of the improvements on the land, and annually to pay interest at the rate of six per cent on the deferred payments; that Lebbeus Clark purchased of the Lindleys plaintiff's obligation to convey to them the land in controversy, and about October, 1855, assigned the same to McGiffin, who gave Clark a written obligation, binding himself to pay plaintiff what Lindleys owed him under said contract; that the Lindleys permitted the taxes to become delinquent upon eighty acres of the land, and the same to be sold for taxes, and that plaintiff was compelled to pay the sum of $94.99 to prevent the tax purchaser from getting a deed and defeating his vendor's lien.

That on the 25th March, 1857, plaintiff brought suit in the court of common pleas for Greene county, Pennsylvania, against the said B. F. and J. A. Lindley to recover the interest then accrued as well as the value of the improvements, which it was agreed should be paid on the 25th December, 1855. That the process of the suit was served upon J. A. Lindley, and returned as to B. F. Lindley "not found." That such proceedings were had that on the 20th of June, 1867, a judgment was rendered as follows, to wit: "And now, to wit, June 20, 1867, the defendants confess judgment to the plaintiff, with consent of plaintiff, for the sum of $800, which embraces and settles any claims for interest due on purchase-money prior to the commencement of this suit, and also for any claims for improvements mentioned in articles of agreement between plaintiff and defendants. Judgment, also, for costs of suit."

That, although process had not been served on B. F. Lindley, he and Thomas McGiffin had actual notice and

knowledge of the pendency of the suit, and, on one occasion, when arbitrators were hearing proof and estimating value of improvements and interest due, they were present prompting counsel as parties interested in the cause. That J. A. Lindley has taken benefit of the bankrupt law and been discharged from his debts. The plaintiff claims that the adjudication in the court in Pennsylvania against J. A. Lindley is conclusive upon B. F. Lindley, and prays a personal judgment against B. F. Lindley for the value of the improvements with interest thereon and interest on the unpaid purchase-money from date of sale to date of said judgment, and claims also a vendor's lien against the said premises for all the purchase-money and interest due and accruing; and the further sum of $94.99 paid by plaintiff to redeem a portion of said land from tax sale, and asks that the land be sold, under special decree, to satisfy the plaintiff's whole claim.

The defendants, for answer, admit the purchase from plaintiff through his agents, J. Hedge and Wm. Heaton, of the lands named, and the assignment of Lindley to Clark, and of Clark to McGiffin; deny that Thomas McGiffin executed to Lebbeus Clark any obligation for the payment of money on said contract; allege that there has been paid on said contract the sum of $1,610, and admit that the balance remains unpaid.

And by way of further answer, they allege that J. Hedge and William Heaton, acting as the agents of plaintiff for the sale of said lands, willfully, falsely and fraudulently, for the purpose of inducing Lindleys to enter into said contract, represented that the lands were situated between five and six miles from the city of Des Moines; and that the Lindleys did not know, and had no accessible means of ascertaining, their location, but relied upon the representations of plaintiff. That said land, as plaintiff knew, was located between eighteen and twenty miles from Des Moines, and was worth less than one-half the sum it would

have been worth had it been located, as represented, within six miles, or less, of Des Moines.

That Lebbeus Clark bought the land under the belief and with the representation that it was located within six miles of Des Moines; and this defendant, Thomas Mc-Giffin, became the owner thereof under the same belief, and that plaintiff made the same false and fraudulent representations to said McGiffin that he had made to said Lindleys, and with the same purpose and intent.

That, by reason of the premises, Lindleys and Thomas McGiffin have been damaged to the amount of more than $1,600, and the consideration of said contract to an amount exceeding the sum of $1,500, has wholly failed, and there is nothing due or to become due on said contract.

By way of cross-petition, Thomas McGiffin states that he is the owner of the land, and has fully paid for the same, and that plaintiff still holds the legal title; and he asks that plaintiff may be decreed to convey the same to him.

To the defendant's cross-petition the plaintiff demurred, as follows:

" 1. Because, in part, his prayer is based upon the allegation of the written obligation of plaintiff, and that the same has been assigned to him, and he does not file the same or a copy thereof."

" 2. Said McGiffin alleges that he has fully paid for the land, but does not say to whom, whether he has paid to Clark what he, McGiffin, agreed to pay him, or whether he has paid to plaintiff what the Lindleys agreed to pay him."

" 3. There is no matter of fact shown by said Mc-Giffin, sufficient to sustain his said cross-action for a decree to have the title made to him."

To the answer of defendants, the plaintiff demurred as follows:

"1. Because it is not alleged that the agents, Hedge & Heaton, were authorized to make false representations, or that plaintiff made any representations, otherwise than through them."

"2. It is not shown by whom any representations were made to Lebbeus Clark."

"3. It is not alleged that the representations to McGiffin, were made to induce him to purchase the land of Clark, or or that plaintiff had any interest in inducing him so to purchase; nor is it shown that he relied on any such representations, or that plaintiff knew that he did."

"4. The alleged failure of consideration is not such as the court can take cognizance of in this form of pleading, said defendant not making any cross demand for the same."

Both demurrers were overruled. Plaintiff excepted, and appeals.

*M. D. McHenry* for the appellant.

*Nourse & Kauffman* for the appellees.

DAY, Ch. J. — I. *As to the demurrer to defendant's answer.* The fourth ground of demurrer to the answer possesses the most importance, and has been

1. VENDOR AND VENDEE: fraud: action: defense.

chiefly argued. It will conduce to brevity and clearness, first to give it consideration. Appellant claims the prominent question presented by this defense to be, whether a court of equity will, at the instance of a purchaser, who alleges fraudulent representations of value by the seller, as having induced the purchase, modify the contract, and let him have the property at about forty cents on the dollar, of the contract price. And the negative of this proposition he maintains with much earnestness and ability. We cannot, however, suppress the feeling that he has devoted his energies to the

combatting of a proposition, which the theory of the defense does not oblige the defendant to maintain.

Appellant concedes that " if a vendor files his bill to foreclose his vendor's lien, and the purchaser alleging deceitful representations brings his action for damages and a set-off, no man questions the power of the court to entertain the cross-petition and give relief in that form." But, notwithstanding this concession, he denies that the damages arising out of such fraudulent representations can be pleaded as a partial or total *defense* to an action for the purchase money. An examination of adjudged cases will show that the difficulty which was supposed to be in the way of allowing a defense of this nature was that it could *not*, independently of statute, be pleaded as a cross-action. This led, in order to avoid a multiplicity of suits, to the permitting of the fraud to be pleaded as a *defense*, when the failure was total; but, inasmuch as the common law did not admit of *partial* defenses, it was not allowed to be shown where it went only to a part of the consideration. And finally, by way of *recoupment* or reduction of damages, the defendant was allowed, by giving notice in his plea, to prove the injury sustained by the fraud, although it did not go to the whole consideration, and could not be pleaded as a complete defense. Under our statute we have no doubt that fraud may be pleaded as a counter claim or cross-demand, under the provisions of sections 2889 and 2891 of the Revision ; and when so pleaded in addition to defeating the plaintiff's action, it may entitle the defendant to an affirmative judgment. But certainly the granting to the defendant this additional mode of relief does not take away the right which existed at common law of relying upon the fraud as a defense in whole or in part. Under our system of pleading a partial defense may be pleaded. *Davenport Gas Light and Coke Co.* v. *The City of Davenport,* 15 Iowa, 6. That the damages sustained through fraudulent representations in

the sale of both real and personal property may be set up by way of *recoupment* in an action for the price, see *Harrington* v. *Stratton*, 22 Pick. 514; *Sandford*, v. *Handy*, 23 Wend. 260; *Van Epps* v. *Harrison*, 5 Hill, 63; *Lewis* v. *Wilson*, 1 Edw. Ch. 305. It is claimed that, if appellees desired a rescission of the contract, they should show that they had notified Coe of the fraud as soon as they discovered it, and what use they intended to make of it. Citing Story's Eq., § 203; *Boyce's Executors* v. *Grundy*, 3 Pet. 219. This position we concede. But a party who has been defrauded in a contract is not bound to rescind. He has his choice of remedies. He may stand to the bargain and recover damages for the fraud. *Campbell* v. *Fleming*, 1 Adol. and Ell. 40; *Hoggins* v. *Becraft*, 1 Dana. 30. And the current of authority at the present day is, that when he pursues the latter course he need not offer to rescind the contract or give notice of the fraud. See cases above referred to, and those cited in 2 Kent's Com. (8 ed.) 480, note *b*. We do not, however, understand appellant to claim that a party who has been defrauded is bound to give prompt notice if he expects to keep the property, and sue for damages on account of the fraud either in an original action or by way of cross action when sued for the purchase price.

His application to this case of the doctrine for which he contends is based upon the fact that the alleged fraud is pleaded by way of defense, and not by way of cross-action. We are unable, however, to discover any principle which renders the doctrine of the cases to which we have alluded less applicable in the former case than in the latter. The first ground of demurrer is not insisted upon in the argument, and may be regarded as waived. The second and third grounds of demurrer may conveniently be considered together. In the view which we take of the case, it is not material by whom representations were made to Clark, nor for what purpose they were made to McGiffin, nor

whether or not he relied upon them. It is to be observed that a personal judgment is sought against B. F. Lindley for the amount due upon the contract. To prevent this judgment, Lindley would have a right to relied upon the fraud perpetrated in effecting the sale, if no representations had been made to either Clark or McGiffin; and if Lindley can show that nothing is due plaintiff upon his contract, it is quite apparent that no vendor's lien can be established against the land. The court did not err in overruling the demurrer to defendant's answer.

II. *As to the demurrer to the cross petition.* This may be briefly considered. 1. It is not a valid objection to the 2.— PLEADING: cross petition that it does not set out a copy practice: ex- hibits. of the written obligation under which Mc-Giffin claims. This obligation is attached in full to plaintiff's petition, which also alleges the assignment to McGiffin.

2. If the cross petition does not show with sufficient certainty whether the payment for the land was made to Clark or to plaintiff, the defect furnishes ground for a more specific statement, but is not cause of demurrer.

3. If the plaintiff has received for the land all that he is entitled to under the contract, it is quite obvious that he cannot retain the money paid and the title to the land also. Under such circumstances, the plaintiff becomes the trustee of the title for the party entitled to it.

McGiffin holds plaintiff's obligation to Lindleys, and is entitled to the conveyance if full payment has been made. Clearly in an original action he could compel a conveyance to himself. No reason is apparent to us which would authorize his recovery in such action, which does not also sustain his right to recover in this.

The judgment of the court below is

Affirmed.