CONTINENTAL TELEPHONE COMPANY OF NORTH CAROLINA, A CORPORA-
TION, PLAINTIFF v. CARLYLE GUNTER, D/B/A CARLYLE GUNTER
BULLDOZING, DEFENDANT

No. 8930DC916

(Filed 7 August 1990)

1. Telecommunications § 3 (NCI3d) — parking lot excavation — severing of telephone cable — admissibility of Underground Damage Prevention Act

The trial court erred in a negligence action arising from the severing of a telephone cable during the removal of old asphalt from a parking lot by not admitting into evidence

CONTINENTAL TELEPHONE CO. v. GUNTER

[99 N.C. App. 741 (1990)]

portions of the Underground Damage Prevention Act, which requires a person planning to excavate to notify each utility owner having underground utilities located in the proposed area. The language of the act is mandatory; the activities defendant undertook do not fall within the exceptions listed in the Act; defendant contracted to improve the parking lot of a private property owner and his performance of that contract was not road maintenance; and the Act is relevant to the issue of negligence. N.C.G.S. § 87-102(a), N.C.G.S. § 87-106, N.C.G.S. § 20-4.01(13), N.C.G.S. § 8-1.

**Am Jur 2d, Electricity, Gas and Steam § 222; Telecommunications § 36.**

2. **Telecommunications § 3 (NCI3d) — construction — severing of telephone cable — negligence action**

The trial court erred in a negligence action arising from the severing of a telephone cable during the removal of old asphalt from a parking lot by granting a directed verdict for defendant where the Underground Damage Prevention Act, which plaintiffs sought to read into evidence, established a duty owed by defendant to plaintiff; plaintiff brought forward evidence that he had complied with the recording requirements of the Act; and defendant conceded at trial that he did not notify plaintiff that he was going to excavate on a highway right of way before he began work.

**Am Jur 2d, Electricity, Gas and Steam § 222; Telecommunications § 36.**

APPEAL by plaintiff from Judgment of *Judge John J. Snow, Jr.,* entered 23 May 1989 in JACKSON County District Court. Heard in the Court of Appeals 12 March 1990.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Larry C. Harris, Jr. and Mark A. Pinkston for plaintiff appellant.*

*Haire and Bridgers, P.A., by R. Phillip Haire, for defendant appellee.*

COZORT, Judge.

The plaintiff sued to recover damages caused by the defendant's alleged negligence in severing underground telephone cables.

On appeal the plaintiff contends that the trial court erred in directing a verdict for the defendant. We agree.

The defendant, Carlyle Gunter, contracted with the Frontier Trading Post to raise the level of its parking lot, which necessitated removal of the old asphalt. On 2 May 1986, one of Gunter's employees was operating a bulldozer with a ripper attachment. While working in the west entrance of the parking lot, where it adjoins U.S. Highway 441, he severed and pulled from the ground plaintiff's fiberoptic cable.

On 11 February 1987, the plaintiff filed a complaint, alleging that the defendant "knew or should have known of the location of the Plaintiff's cable" and seeking $7,030.60 in damages. The defendant denied liability. At trial plaintiff sought to read to the jury the provisions of the Underground Damage Prevention Act (the Act). The defendant's objection to the admission of the Act was sustained; no basis for the objection or rationale for the trial court's ruling appears in the transcript. At the close of the plaintiff's evidence, the defendant moved for a directed verdict on the grounds that the plaintiff failed to produce sufficient evidence that the defendant had breached a duty owed to the plaintiff. The trial court granted that motion.

[1] On appeal the plaintiff first assigns as error the trial court's refusal to allow portions of the Act to be read in evidence. "When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard for all members of the community from which it is negligence to deviate." Prosser and Keeton on the Law of Torts § 36 (5th ed. 1984); see also *Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893, 897 (1955); and *Jackson v. Housing Authority of High Point*, 73 N.C. App. 363, 368, 326 S.E.2d 295, 298, *disc. review denied*, 313 N.C. 603, 330 S.E.2d 610 (1985), *aff'd*, 316 N.C. 259, 341 S.E.2d 523 (1986). Statutes are admissible, if relevant. *C.C.T. Equipment Co. v. Hertz Corp.*, 256 N.C. 277, 286, 123 S.E.2d 802, 809 (1962). They "may be read in evidence from the printed statute books." N.C. Gen. Stat. § 8-1 (1989).

The Underground Damage Prevention Act provides in part as follows:

(a) Except as provided in G.S. 87-106, *before commencing any excavations in highways,* public spaces or in private ease-

ments of a utility owner, a person planning to excavate shall notify each utility owner having underground utilities located in the proposed area to be excavated, either orally or in writing, not less than two nor more than 10 working days prior to starting, of his intent to excavate.

N.C. Gen. Stat. § 87-102 (1989) (emphasis added).

(a) Except as provided in G.S. 87-106, *no person may excavate in a highway, a public space, or a private easement of a utility owner without first having given the notice required* in G.S. 87-102 to the utility owners.

(b) In addition to the notification requirements, each person excavating shall:

> (1) Plan the excavation to avoid damage and to minimize interference with underground utilities in and near the construction area, to the best of his abilities; . . .

N.C. Gen. Stat. § 87-104 (1989) (emphasis added).

An association [sponsored by utility owners] shall record with the Register of Deeds of each county in which participating utility owners own or operate underground utilities, a notarized document providing the telephone number and address of the association, a description of the geographical area served by the association, and a list of the names and addresses of the utility owners receiving these services from the association.

N.C. Gen. Stat. § 87-109 (1989).

(a) Each utility owner having underground utilities in North Carolina shall record a notarized document containing the name of the utility owner and the title, address, and telephone number of its representatives designated to receive the written or oral notice of intent to excavate, with the Register of Deeds of each county in which the utility owner owns or operates underground facilities.

N.C. Gen. Stat. § 87-110 (1989). We conclude that the Act is relevant to the issue of negligence in the case below and that pertinent portions of it should have been admitted in evidence.

Defendant contends that the Act is irrelevant to the case below. He argues, on one hand, that the Act adds nothing to the common law duty to exercise ordinary care, and, on the other, that, if

the Act does establish a duty owed by all excavators to utility owners, defendant's activities were not "excavation" within the meaning of the Act. We reject both arguments.

The language of the Act is mandatory: "[A] person planning to excavate *shall* notify each utility owner having underground utilities located in the proposed area to be excavated . . . ." N.C. Gen. Stat. § 87-102(a) (1989) (emphasis added). The activities defendant undertook do not fall within the exceptions listed in § 87-106 of the Act, which exempts agricultural tilling, certain excavations by the State or utility owners, some pole replacements, and certain emergency work. Finally, N.C. Gen. Stat. § 20-4.01(13) defines highway as the "entire width between property or right-of-way lines," and the defendant conceded at trial that his employee "was working in the highway right-of-way."

N.C. Gen. Stat. § 87-101(3) defines excavation as "an operation for the purpose of the movement or removal of earth . . . in or on the ground by use of equipment operated by means of mechanical power." Defendant correctly notes that "road maintenance" is excluded from the definition of "excavation" found in § 87-101(3). The defendant contends that his "work was repair and resurfacing" and thus "road maintenance." That argument is disingenuous. The defendant contracted to improve the parking lot of a private property owner. His performance of that contract was not road maintenance as defined by N.C. Gen. Stat. § 87-101(10): "preservation, including repairs and resurfacing of a highway."

[2] Thus, the trial court erred in directing a verdict for the defendant. The Act, which plaintiff sought to read in evidence, established a duty owed by defendant to plaintiff. At trial plaintiff brought forward evidence that it had complied with the recording requirements of the Act (§§ 87-109 and -110). The defendant conceded at trial that he did not notify the plaintiff that he was "going to excavate on a highway right-of-way at the Frontier Trading Post" before he began work. A directed verdict for the defendant "may be granted only if, as a matter of law, the evidence is insufficient to justify a verdict" for the plaintiff. *Dickinson v. Pake*, 284 N.C. 576, 583, 201 S.E.2d 897, 902 (1974). The proffered evidence in the case below showed a duty owed to plaintiff, and defendant concedes he did not comply with that duty. That evidence is sufficient to justify a verdict for plaintiff.

For the reasons stated above the trial court's Judgment of directed verdict is reversed and the case is remanded for a new trial.

Reversed and remanded for new trial.

Chief Judge HEDRICK and Judge PARKER concur.